T.C. Memo. 2003-329

UNITED STATES TAX COURT

EUGENE AMOS, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13391-01.          Filed December 1, 2003.

Terrance A. Costello, for petitioner.

Blaine C. Holiday, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined a deficiency of
$61,668 in petitioner's Federal income tax (tax) for 1997.

The only issue remaining for decision[1] is whether the

_____

[1]Petitioner concedes the determinations in the notice of
deficiency (notice) issued to petitioner with respect to 1997 to
disallow $6,755 of deductions claimed by petitioner in Schedule
                                              (continued...)

$200,000 settlement amount (settlement amount at issue) that petitioner received in 1997 in settlement of a claim is excludable under section 104(a)(2)[2] from petitioner's gross income for that year.  We hold that $120,000 is excludable and that $80,000 is not.

### FINDINGS OF FACT

Most of the facts have been stipulated and are so found.

At the time petitioner filed the petition in this case, he resided in Minneapolis, Minnesota.

During 1997, petitioner was employed as a television camera-man.  In that capacity, on January 15, 1997, petitioner was operating a handheld camera during a basketball game between the Minnesota Timberwolves and the Chicago Bulls.  At some point during that game, Dennis Keith Rodman (Mr. Rodman), who was playing for the Chicago Bulls, landed on a group of photographers, including petitioner, and twisted his ankle.  Mr. Rodman then kicked petitioner.  (We shall refer to the foregoing incident involving Mr. Rodman and petitioner as the incident.)

---

[1](...continued)
A, Itemized Deductions, and $7,178 of deductions claimed by petitioner in Schedule C, Profit or Loss From Business.  There are other determinations in the notice that are computational in that resolution of the issues relating to such determinations flows automatically from our resolution of the issue addressed herein.

[2]All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

On January 15, 1997, shortly after the incident, petitioner was taken by ambulance for treatment at Hennepin County Medical Center. Petitioner informed the medical personnel at that medical center (Hennepin County medical personnel) that he had experienced shooting pain to his neck immediately after having been kicked in the groin, but that such pain was subsiding. The Hennepin County medical personnel observed that petitioner was able to walk, but that he was limping and complained of experiencing pain. The Hennepin County medical personnel did not observe any other obvious signs of trauma. Petitioner informed the Hennepin County medical personnel that he was currently taking pain medication for a preexisting back condition. The Hennepin County medical personnel offered additional pain medications to petitioner, but he refused those medications. After a dispute with the Hennepin County medical personnel concerning an unrelated medical issue, petitioner left Hennepin County Medical Center without having been discharged by them.

While petitioner was seeking treatment at Hennepin County Medical Center, he contacted Gale Pearson (Ms. Pearson) about representing him with respect to the incident. Ms. Pearson was an attorney who had experience in representing plaintiffs in personal injury lawsuits. After subsequent conversations and a meeting with petitioner, Ms. Pearson agreed to represent him with respect to the incident.

On January 15, 1997, after the incident and petitioner's visit to the Hennepin County Medical Center, petitioner filed a report (police report) with the Minneapolis Police Department. In the police report, petitioner claimed that Mr. Rodman had assaulted him.

On January 16, 1997, petitioner sought medical treatment at the Veterans Affairs (VA) Medical Center. The medical personnel at that medical center (VA medical personnel) took X-rays of petitioner's back. Petitioner complained to the VA medical personnel about his groin area, but he did not advise them that he was experiencing any symptoms related to that complaint. The VA medical personnel determined that there was no swelling of, but they were unable to ascertain whether there was bruising around, petitioner's groin area. The VA medical personnel gave petitioner some pain medication and told him to continue taking his other prescribed medications. The VA medical personnel prepared a report regarding petitioner's January 16, 1997 visit to the VA Medical Center. That report indicated that, except for certain disk problems that petitioner had since at least as early as February 14, 1995, "the vertebrae are intact and the remaining disk spaces are normal."

Very shortly after the incident on a date not disclosed by the record, Andrew Luger (Mr. Luger), an attorney representing Mr. Rodman with respect to the incident, contacted Ms. Pearson.

Several discussions and a few meetings took place between Ms. Pearson and Mr. Luger.  Petitioner accompanied Ms. Pearson to one of the meetings between her and Mr. Luger, at which time Mr. Luger noticed that petitioner was limping.  Shortly after those discussions and meetings, petitioner and Mr. Rodman reached a settlement.

On January 21, 1997, Mr. Rodman and petitioner executed a document entitled "CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE" (settlement agreement).  The settlement agreement provided in pertinent part:

> For and in consideration of TWO HUNDRED THOUSAND DOLLARS ($200,000), the mutual waiver of costs, attorneys' fees and legal expenses, if any, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Eugene Amos [petitioner], on behalf of himself, his agents, representatives, attorneys, assignees, heirs, executors and administrators, hereby releases and forever discharges Dennis Rodman, the Chicago Bulls, the National Basketball Association and all other persons, firms and corporations together with their subsidiaries, divisions and affiliates, past and present officers, directors, employees, insurers, agents, personal representatives and legal counsel, from any and all claims and causes of action of any type, known and unknown, upon and by reason of any damage, loss or injury which heretofore have been or heretoafter may be sustained by Amos arising, or which could have arisen, out of or in connection with an incident occurring between Rodman and Amos at a game between the Chicago Bulls and the Minnesota Timberwolves on January 15, 1997 during which Rodman allegedly kicked Amos ("the Incident"), including but not limited to any statements made after the Incident or subsequent conduct relating to the Incident by Amos, Rodman, the Chicago Bulls, the National Basketball Association, or any other person, firm or corporation, or any of their subsidiaries, divisions, affiliates, officers, directors, employees, insurers,

agents, personal representatives and legal counsel. This Agreement and Release includes, but is not limited to claims, demands, or actions arising under the common law and under any state, federal or local statute, ordinance, regulation or order, including claims known or unknown at this time, concerning any physical, mental or emotional injuries that may arise in the future allegedly resulting from the Incident.

    *        *        *        *        *        *        *

It is further understood and agreed that the payment of the sum described herein is not to be construed as an admission of liability and is a compromise of a disputed claim.  It is further understood that part of the consideration for this Agreement and Release includes an agreement that Rodman and Amos shall not at any time from the date of this Agreement and Release forward disparage or defame each other.

It is further understood and agreed that, as part of the consideration for this Agreement and Release, the terms of this Agreement and Release shall forever be kept confidential and not released to any news media personnel or representatives thereof or to any other person, entity, company, government agency, publication or judicial authority for any reason whatsoever except to the extent necessary to report the sum paid to appropriate taxing authorities or in response to any subpoena issued by a state or federal governmental agency or court of competent jurisdiction * * * Any court reviewing a subpoena concerning this Agreement and Release should be aware that part of the consideration for the Agreement and Release is the agreement of Amos and his attorneys not to testify regarding the existence of the Agreement and Release or any of its terms.

    *        *        *        *        *        *        *

It is further understood and agreed that Amos and his representatives, agents, legal counsel or other advisers shall not, from the date of this Agreement and Release, disclose, disseminate, publicize or instigate or solicit any others to disclose, disseminate or publicize, any of the allegations or facts relating to the Incident, including but not limited to any allegations or facts or opinions relating to Amos' potential

claims against Rodman or any allegations, facts or opinions relating to Rodman's conduct on the night of January 15, 1997 or thereafter concerning Amos.  In this regard, Amos agrees not to make any further public statement relating to Rodman or the Incident or to grant any interviews relating to Rodman or the Incident. * * *

It is further understood and agreed that any material breach by Amos or his attorney, agent or representative of the terms of this Agreement and Release will result in immediate and irreparable damage to Rodman, and that the extent of such damage would be difficult, if not impossible, to ascertain.  To discourage any breach of the terms of this Agreement and Release, and to compensate Rodman should any such breach occur, it is understood and agreed that Amos shall be liable for liquidated damages in the amount of TWO HUNDRED THOUSAND and No/100 Dollars ($200,000) in the event such a material breach occurs.  Amos agrees that this sum constitutes a reasonable calculation of the damages Rodman would incur due to a material breach.

It is further understood and agreed, that, in the event Rodman or Amos claim a material breach of this Agreement and Release has occurred, either party may schedule a confidential hearing before an arbitrator of the American Arbitration Association for a final, binding determination as to whether a material breach has occurred.  If, after the hearing, the arbitrator finds that Amos has committed a material breach, the arbitrator shall order that Amos pay the sum of $200,000 in liquidated damages to Rodman. * * *

Amos further represents, promises and agrees that no administrative charge or claim or legal action of any kind has been asserted by him or on his behalf in any way relating to the Incident with the exception of a statement given by Amos to the Minneapolis Police Department.  Amos further represents, promises and agrees that, as part of the consideration for this Agreement and Release, he has communicated to the Minneapolis Police Department that he does not wish to pursue a criminal charge against Rodman, and that he has communicated that he will not cooperate in any criminal investigation concerning the Incident.  Amos further represents, promises and agrees that he will

not pursue any criminal action against Rodman concerning the Incident, that he will not cooperate should any such action or investigation ensue, and that he will not encourage, incite or solicit others to pursue a criminal investigation or charge against Rodman concerning the Incident.

Petitioner filed a tax return (return) for his taxable year 1997. In that return, petitioner excluded from his gross income the $200,000 that he received from Mr. Rodman under the settlement agreement.

In the notice that respondent issued to petitioner with respect to 1997, respondent determined that petitioner is not entitled to exclude from his gross income the settlement amount at issue.

OPINION

We must determine whether the settlement amount at issue may be excluded from petitioner's gross income for 1997. Petitioner bears the burden of proving that the determination in the notice to include the settlement amount at issue in petitioner's gross income is erroneous.[3] See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 61(a) provides the following sweeping definition of the term "gross income": "Except as otherwise provided in this

---

[3]Petitioner does not contend that sec. 7491(a) is applicable in this case. Even if petitioner had advanced such a contention, he has not established that he has complied with the applicable requirements of sec. 7491(a)(2). Under the circumstances presented in this case, we conclude that the burden of proof does not shift to respondent under sec. 7491(a).

subtitle, gross income means all income from whatever source derived".  Not only is section 61(a) broad in its scope, Commissioner v. Schleier, 515 U.S. 323, 328 (1995), exclusions from gross income must be narrowly construed, id.; United States v. Burke, 504 U.S. 229, 248 (1992).

Section 104(a)(2) on which petitioner relies provides that gross income does not include:

> (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

The regulations under section 104(a)(2) restate the statutory language of that section and further provide:

> The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.  [Sec. 1.104-1(c), Income Tax Regs.]

The Supreme Court summarized the requirements of section 104(a)(2) as follows:

> In sum, the plain language of § 104(a)(2), the text of the applicable regulation, and our decision in Burke establish two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2).  First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness." * * * [Commissioner v. Schleier, supra at 336-337.]

When the Supreme Court issued its opinion in Commissioner v.

Schleier*, supra*, section 104(a)(2), as in effect for the year at
issue in Schleier*, required, inter alia, that, in order to be
excluded from gross income, an amount of damages had to be
received "on account of personal injuries or sickness."  After
the Supreme Court issued its opinion in Schleier*, Congress
amended (1996 amendment) section 104(a)(2), effective for amounts
received after August 20, 1996, by adding the requirement that,
in order to be excluded from gross income, any amounts received
must be on account of personal injuries that are physical or
sickness that is physical.[4]  Small Business Job Protection Act of
1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1755, 1838-1839.  The
1996 amendment does not otherwise change the requirements of
section 104(a)(2) or the analysis set forth in Commissioner v.
Schleier, supra*; it imposes an additional requirement for an
amount to qualify for exclusion from gross income under that
section.

Where damages are received pursuant to a settlement agree-
ment, such as is the case here, the nature of the claim that was
the actual basis for settlement controls whether such damages are

_____

[4]Sec. 104(a) provides that emotional distress is not to be
treated as a physical injury or physical sickness for purposes of
sec. 104(a)(2), except for damages not in excess of the amount
paid for medical care attributable to emotional distress.  In
this connection, the legislative history of the 1996 amendment
states:  "It is intended that the term emotional distress in-
cludes symptoms (e.g., insomnia, headaches, stomach disorders)
which may result from such emotional distress." H. Conf. Rept.
104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041 n.56.

excludable under section 104(a)(2).  United States v. Burke,
supra at 237.  The determination of the nature of the claim is
factual.  Robinson v. Commissioner, 102 T.C. 116, 126 (1994),
affd. in part, revd. in part, and remanded on another issue 70
F.3d 34 (5th Cir. 1995); Seay v. Commissioner, 58 T.C. 32, 37
(1972).  Where there is a settlement agreement, that determina-
tion is usually made by reference to it.  See Knuckles v. Commis-
sioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo.
1964-33; Robinson v. Commissioner, supra.  If the settlement
agreement lacks express language stating what the amount paid
pursuant to that agreement was to settle, the intent of the payor
is critical to that determination.  Knuckles v. Commissioner,
supra; see also Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir.
1961), affg. per curiam T.C. Memo. 1960-21.  Although the belief
of the payee is relevant to that inquiry, the character of the
settlement payment hinges ultimately on the dominant reason of
the payor in making the payment.  Agar v. Commissioner, supra;
Fono v. Commissioner, 79 T.C. 680, 696 (1982), affd. without
published opinion 749 F.2d 37 (9th Cir. 1984).  Whether the
settlement payment is excludable from gross income under section
104(a)(2) depends on the nature and character of the claim
asserted, and not upon the validity of that claim.  See Bent v.
Commissioner, 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir.
1987); Glynn v. Commissioner, 76 T.C. 116, 119 (1981), affd.

without published opinion 676 F.2d 682 (1st Cir. 1982); Seay v. Commissioner, supra.

The dispute between the parties in the instant case relates to how much of the settlement amount at issue Mr. Rodman paid to petitioner on account of physical injuries. It is petitioner's position that the entire $200,000 settlement amount at issue is excludable from his gross income under section 104(a)(2). In support of that position, petitioner contends that Mr. Rodman paid him the entire amount on account of the physical injuries that he claimed he sustained as a result of the incident.

Respondent counters that, except for a nominal amount (i.e., $1), the settlement amount at issue is includable in petitioner's gross income. In support of that position, respondent contends that petitioner has failed to introduce any evidence regarding, and that Mr. Rodman was skeptical about, the extent of petitioner's physical injuries as a result of the incident. Consequently, according to respondent, the Court should infer that petitioner's physical injuries were minimal. In further support of respondent's position to include all but $1 of the settlement amount at issue in petitioner's gross income, respondent contends that, because the amount of any liquidated damages (i.e., $200,000) payable by petitioner to Mr. Rodman under the settlement agreement was equal to the settlement amount (i.e., $200,000) paid to petitioner under that agreement, Mr. Rodman did

not intend to pay the settlement amount at issue in order to compensate petitioner for his physical injuries.

On the instant record, we reject respondent's position. With respect to respondent's contentions that petitioner has failed to introduce evidence regarding, and that Mr. Rodman was skeptical about, the extent of petitioner's physical injuries as a result of the incident, those contentions appear to ignore the well-established principle under section 104(a)(2) that it is the nature and character of the claim settled, and not its validity, that determines whether the settlement payment is excludable from gross income under section 104(a)(2). See Bent v. Commissioner, supra; Glynn v. Commissioner, supra; Seay v. Commissioner, supra. In any event, we find below that the record establishes that Mr. Rodman's dominant reason in paying the settlement amount at issue was petitioner's claimed physical injuries as a result of the incident.

With respect to respondent's contention that Mr. Rodman did not intend to pay the settlement amount at issue in order to compensate petitioner for his physical injuries because the amount of liquidated damages (i.e., $200,000) payable by petitioner to Mr. Rodman under the settlement agreement was equal to the settlement amount (i.e., $200,000) paid to petitioner under that agreement, we do not find the amount of liquidated damages payable under the settlement agreement to be determinative of the

reason for which Mr. Rodman paid petitioner the settlement amount at issue.

On the record before us, we find that Mr. Rodman's dominant reason in paying the settlement amount at issue was to compensate petitioner for his claimed physical injuries relating to the incident.[5]  Our finding is supported by the settlement agreement, a declaration by Mr. Rodman (Mr. Rodman's declaration),[6] and Ms. Pearson's testimony.

The settlement agreement expressly provided that Mr. Rodman's payment of the settlement amount at issue

> releases and forever discharges * * * [Mr.] Rodman
> * * * from any and all claims and causes of action of
> any type, known and unknown, upon and by reason of any
> damage, loss or injury * * * sustained by Amos [peti-
> tioner] arising, or which could have arisen, out of or
> in connection with * * * [the incident].

Mr. Rodman stated in Mr. Rodman's declaration that he entered into the settlement agreement "to resolve any potential claims" and that the settlement agreement was intended to resolve peti- tioner's "claim without having to expend additional defense costs."  The only potential claims of petitioner that are dis- closed by the record are the potential claims that petitioner had

---

[5]As discussed below, Mr. Rodman paid a portion of the set- tlement amount at issue on account of other secondary reasons.

[6]The parties introduced into evidence a declaration by Mr. Rodman, who did not appear as a witness at trial.  The parties stipulated the accuracy and truthfulness of Mr. Rodman's state- ments in that declaration.

for the physical injuries that he claimed he sustained as a result of the incident. Furthermore, Ms. Pearson testified that Mr. Rodman paid the entire settlement amount at issue to petitioner on account of his physical injuries. As discussed below, Ms. Pearson's testimony that Mr. Rodman paid that entire amount on account of petitioner's physical injuries is belied by the terms of the settlement agreement. Nonetheless, her testimony supports our finding that Mr. Rodman's dominant reason in paying petitioner the settlement amount at issue was to compensate him for claimed physical injuries relating to the incident.

We have found that Mr. Rodman's dominant reason in paying petitioner the settlement amount at issue was to compensate him for his claimed physical injuries relating to the incident. However, the settlement agreement expressly provided that Mr. Rodman paid petitioner a portion of the settlement amount at issue in return for petitioner's agreement not to: (1) Defame Mr. Rodman, (2) disclose the existence or the terms of the settlement agreement, (3) publicize facts relating to the incident, or (4) assist in any criminal prosecution against Mr. Rodman with respect to the incident (collectively, the nonphysical injury provisions).

The settlement agreement does not specify the portion of the settlement amount at issue that Mr. Rodman paid petitioner on account of his claimed physical injuries and the portion of such

amount that Mr. Rodman paid petitioner on account of the nonphysical injury provisions in the settlement agreement.  Nonetheless, based upon our review of the entire record before us, and bearing in mind that petitioner has the burden of proving the amount of the settlement amount at issue that Mr. Rodman paid him on account of physical injuries, we find that Mr. Rodman paid petitioner $120,000 of the settlement amount at issue on account of petitioner's claimed physical injuries and $80,000 of that amount on account of the nonphysical injury provisions in the settlement agreement.  On that record, we further find that for the year at issue petitioner is entitled under section 104(a)(2) to exclude from his gross income $120,000 of the settlement amount at issue and is required under section 61(a) to include in his gross income $80,000 of that amount.

We have considered all of the contentions and arguments of respondent and of petitioner that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.